**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Derek Jahn Chabrowski,<br><br>    Plaintiff,<br><br>v.<br><br>Bank of America NA, et al.,<br><br>    Defendants. | No. CV-17-08111-PCT-JAT<br><br>**ORDER** |

Pending before the Court are Plaintiff Derek Chabrowski's ("Plaintiff") Motion for Partial Summary Judgment (Doc. 28), Defendant Jeffrey Robinson's ("Defendant Robinson") Motion for Summary Judgment (Doc. 38), and Defendant Bank of America's ("Defendant Bank") Motion for Summary Judgment (Doc. 50). Also pending before the Court is Defendant Bank's Motion for Leave to File a Declaration (Doc. 34). The Court now rules on the motions.

**I.    BACKGROUND**

On October 11, 2017, Plaintiff filed his pending Motion for Partial Summary Judgment (Doc. 28). Defendant Bank filed a Response (Doc. 32) on October 25, 2017 and Plaintiff then filed a Reply (Doc. 37) on November 1, 2017. In opposition, Defendant Bank also filed a Motion for Leave to File a Declaration (Doc. 34) on November 1, 2017.[1]

---

[1] Plaintiff did not oppose the Motion for Leave to File a Declaration (Doc. 34). After a review of the relevant authorities, the Court exercises its discretion and grants Defendant Bank's Motion for Leave to File a Declaration (Doc. 34), as Defendant Bank

On November 13, 2017, Defendant Robinson filed his pending Motion for Summary Judgment (Doc. 38). Plaintiff filed a Response on November 27, 2017 (Doc. 40) and Defendant Robinson then filed a Reply (Doc. 42) on December 5, 2017.

Finally, Defendant Bank filed its pending Motion for Summary Judgment (Doc. 50) on February 16, 2018. Plaintiff filed a Response (Doc. 52) on February 23, 2018 and Defendant Bank then filed a Reply (Doc. 54) on March 12, 2018.[2]

The Complaint (Doc. 1-3) in this case asserts the following four causes of action discussed herein: (i) failure to give notice of non-judicial foreclosure pursuant to A.R.S. §

---

has met the requisite showing of good cause and the granting of the motion is in the interests of judicial economy and efficiency. *See* Fed. R. Civ. P. 6(b), (d); 56(c); *see also Defs. of Wildlife v. Flowers*, No. CIV 02-195-TUC-CKJ, 2003 WL 22145716, at *6 (D. Ariz. Aug. 18, 2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993)). Although the Court grants the motion, the Court notes that the Declaration (currently lodged at Doc. 35) does not affect the outcome in its consideration of the pending summary judgment motions.

[2] Plaintiff filed an "Objection" (Doc. 56) to Defendant Bank's Reply (Doc. 54) on the grounds that the Reply is "late and dilatory." (Doc. 56 at 1). Plaintiff cites District of Arizona Local Rule Civil ("LRCiv") 7.2(d) to support his argument that the Reply is untimely, but that is not the correct rule governing reply memoranda to summary judgment motions. *See id. But see* LRCiv 7.2(d) (the timeline for responsive memoranda regarding a summary judgment is provided by LRCiv 56.1). LRCiv 56.1 provides, with regard to motions for summary judgment, "the moving party, unless otherwise ordered by the Court, may have fifteen (15) days after service of the responsive memorandum within which to serve and file a reply memorandum." LRCiv 56.1(d). Federal Rule of Civil Procedure ("Rule") 6 provides that, when a period is stated in days, "exclude the day of the event that triggers the period" and "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(A), (C).

Here, Plaintiff filed his Response (Doc. 52) on February 23, 2018. Under LRCiv 56.1(d) and Rule 6, Defendant Bank's Reply (Doc. 54) was due on March 12, 2018, which is precisely when Defendant Bank filed its Reply (Doc. 54). *See* LRCiv56.1(d); Fed. R. Civ. P. 6. Counting from February 24, 2018—as per Rule 6—the fifteenth day is March 10, 2018. *See* Fed. R. Civ. P. 6(A). March 10, 2018, however, was a Saturday, making the period run until the end of the next business day: Monday, March 12, 2018. *See* Fed. R. Civ. P. 6(C). Accordingly, Defendant Bank's Reply (Doc. 54) was timely.

Further, Plaintiff complains that Defendant Bank's Reply (Doc. 54) was "dilatory" because the Motion (Doc. 50) and Reply (Doc. 54) "are a combined 19 pages as filed." (Doc. 56 at 1). Again, Plaintiff misinterprets the filing rules. Under LRCiv 7.2(e), a motion for summary judgment "may not exceed seventeen (17) pages" and a reply memorandum, separately, "may not exceed eleven (11) pages." LRCiv7.2(e)(1), (2). Here, Defendant Bank's Motion (Doc. 50) is nine pages and Defendant Bank's Reply (Doc. 54) is eight pages; both well within the limits of the applicable rules. Accordingly, Plaintiff's Objection (Doc. 56) is overruled and, to the extent it should be construed as a motion to strike Defendant Bank's Reply (Doc. 54), that motion is denied.

33-808; (ii) violation of Protecting Tenants at Foreclosure Act of 2009; (iii) unlawful eviction; and (iv) civil trespass. (Doc. 1-3 at 3–12).

**A.  Facts**

Plaintiff brings this suit against Defendant Bank and Defendant Robinson for activity involving the house located at 585 Jones Drive, Lake Havasu City, AZ 86406 (the "Property"). (*Id.*). The following facts are either undisputed or recounted in the light most favorable to Plaintiff.

In November 2005, Richard and Sharon Armstrong (collective, the "Armstrongs") obtained a mortgage loan secured by the Property under a Deed of Trust, which was subsequently acquired by Defendant Bank. (Defendant Bank's Statement of Facts ("D Bank SOF"), Doc. 51 at ¶ 1 (citing Doc. 35 at 2)). Plaintiff was not party to the original mortgage loan transaction, but began visiting the Property as early as 2013 at the behest of the Armstrongs to "maintain the house." (D Bank SOF ¶ 4 (citing 51-1 at 4)). Plaintiff claims to have thereafter acquired an interest in the Property via "[a]dverse possession" or an unsigned "quitclaim deed." (D Bank SOF ¶¶ 5–6 (citing Doc. 51-1 at 5–6)). On September 4, 2014, Plaintiff also recorded a Statement of Claim of Right with respect to the Property. (D Bank SOF ¶¶ 8–9 (citing Doc. 51-1 at 15)). Plaintiff was aware that there was a mortgage on the Property that was not being paid, which presented the possibility of foreclosure. (D Bank SOF ¶¶ 12–14 (citing Doc. 51-1 at 16)).

The Armstrongs ultimately defaulted on the mortgage loan and Quality Loan Service Corporation, as trustee under the Deed of Trust securing the loan, recorded a Notice of Trustee's Sale in Mohave County on February 4, 2015. (Doc. 35 at 2). On May 11, 2015, the Property was sold at a trustee sale to the Federal National Mortgage Association ("FannieMae"). (D Bank SOF ¶ 26; Doc. 28 at 3). Fannie Mae then retained Defendant Robinson to secure, renovate, and relist the Property. (Doc. 28 at 3–4; Defendant Robinson's Statement of Facts ("D Robinson SOF"), Doc. 39 at ¶¶ 2–3, 7). Defendant Robinson claims to have posted a copy of the Notice of Trustee's Sale on the front door of the Property on or about May 15, 2015. (D Bank SOF ¶ 25; D Robinson

SOF ¶ 3–4; Plaintiff's Statement of Facts ("PSOF"), Doc. 29 at ¶ 2; Doc. 28 at 3–4). Plaintiff asserts that both Defendant Bank and Defendant Robinson did not properly carry out the notice process and questions the authenticity of the evidence regarding the posting at the Property. (PSOF ¶¶ 6, 8–10; Doc. 30 at 2–4; Doc. 41). Defendant Robinson oversaw the renovation process, which included clearing out the Property, prior to the sale of the Property to a new buyer on December 22, 2015. (Doc. 28 at 4).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting

Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. In the summary judgment context, however, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249–50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citations omitted).

### III. PLAINTIFF'S OBJECTION

Plaintiff argues in his Response (Doc. 52) to Defendant Bank's Motion for Summary Judgment (Doc. 50) that his own deposition testimony is "inadmissible as it was done under duress and without proper notice." (Doc. 52 at 1). To the extent that Defendant Bank's summary judgment arguments are premised on information obtained through Plaintiff's deposition, the Court will address the admissibility of Plaintiff's deposition testimony prior to addressing the merits of the pending motion.

Defendant Bank indeed relies on Plaintiff's deposition testimony to establish the undisputed facts regarding Plaintiff's relationship with the Property. (*See generally* Doc. 50; Doc. 51). "At a hearing or trial, all or part of a deposition may be used against a party" as long as certain legal formalities are met. Fed. R. Civ. P. 32; *see also Morgal v. Arpaio*, No. CV 07-0670-PHX-RCB, 2012 WL 5392229, at *5 (D. Ariz. Nov. 5, 2012)

(citations omitted) (holding that "a deposition can be used to support or oppose a summary judgment motion" even if the deposition was taken prior to the joinder of a defendant, which is not at issue here). Rule 32 provides, in pertinent part:

> A deposition must not be used against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place—and this motion was still pending when the deposition was taken.

Fed. R. Civ. P. 32(a)(5)(A).

Here, Plaintiff argues that he did not receive sufficient notice prior to his deposition taken on January 31, 2018. (Doc. 52 at 2). The record demonstrates, however, that Defendant Bank served Plaintiff with a Notice of Deposition (Doc. 54-1 at 1–4) on January 5, 2018, which set his deposition for January 23, 2018. (Doc. 54 at 3). Plaintiff received an email (Doc. 54-1 at 6) from Defendant Bank regarding the deposition on January 5, 2018 and Plaintiff was served with a Notice of Service of Discovery (Doc. 44), filed electronically on January 8, 2018, that explicitly references the deposition. (Doc. 44 at 2).[3] Nevertheless, Plaintiff failed to object or appear for his deposition on January 23, 2018, arguing that he did not receive any notice of it. (*Id.*; *see also* Doc. 52 at 2). Per the parties' agreement, Plaintiff's deposition was rescheduled for January 31, 2018 and Plaintiff was in fact deposed on that date. (Doc. 47; *see also* Doc. 54-1 at 62–65).

Plaintiff complains herein that his January 31, 2018 deposition took place less than 14 days after the point at which the deposition was rescheduled. (Doc. 52 at 2). While true, the deposition occurred well after 14 days from when Plaintiff received the original Notice of Deposition (Doc. 54-1 at 1–4) on January 5, 2018, thus satisfying the

---

[3] The Electronic Case Filing Administrative Policies and Procedures Manual ("ECF Manual") for the District of Arizona provides that an ECF Notice of Electronic Filing "will constitute service of the document for purposes of the Federal Rules of Civil, Criminal and Appellate Procedure. Registration as an ECF user constitutes consent to electronic service through the court's transmission facilities." ECF Manual, Section II.D.2 at 7–8. Here, Plaintiff both requested (Doc. 25) and received electronic Notice of Service (Doc. 44). Therefore, Plaintiff is without excuse regarding notice of his deposition.

requirements of Rule 32. (Doc. 54-1 at 67). Regardless of the amount of notice Plaintiff received, Plaintiff did not move for a protective order or otherwise promptly object regarding the date of the rescheduled deposition in agreeing to be deposed on January 31, 2018. (*See* Doc. 54 at 4 (citing Fed. R. Civ. P. 32(a)(5)). As provided by Rule 32(d)(1), "[a]n objection to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving the notice." Fed. R. Civ. P. 32(d)(1). As a result, any outstanding notice objections are waived due to Plaintiff's failure to promptly and properly object. Finally, Plaintiff provides no support for his claim that his deposition was taken under "duress" beyond a conclusory statement to that effect and the notice issue discussed herein. (Doc. 52 at 3).[4]

Accordingly, Plaintiff's objections regarding Defendant Bank's use of Plaintiff's deposition testimony are overruled and Plaintiff's request to preclude his own deposition testimony is denied. The Court finds that Plaintiff's deposition testimony is admissible for the purpose of considering the pending summary judgment motions and may be properly relied upon by Defendant Bank against Plaintiff.

### IV. DEFENDANT BANK'S MOTION FOR SUMMARY JUDGMENT

Defendant Bank moves for summary judgment on all four of Plaintiff's causes of action. (Doc. 50 at 1). The Complaint (Doc. 1-3) does not differentiate between Defendant Bank and Defendant Robinson in setting out Plaintiff's claims, but Plaintiff specifies for the first time in his Response (Doc. 52) that only the first cause of action pertains to Defendant Bank. (Doc. 52 at 3). By Plaintiff's own concession, "these last

---

[4] Plaintiff also argues that use of his deposition violates Rule 32(a)(5)(B). (Doc. 52 at 2). Rule 32(a)(5)(B) may preclude use of a deposition taken without leave of court under the unavailability provision of Rule 30(a)(2)(A)(iii) "against a party who shows that, when served with the notice, it could not, despite diligent efforts, obtain an attorney to represent it at the deposition." Fed. R. Civ. P. 32(a)(5)(B). That provision only applies to depositions taken "before the parties have conferred" as required by Rule 26. Fed. R. Civ. P. 26(d). Here, the parties conferred regarding the discovery schedule, which was subject to the Court's Scheduling Order (Doc. 21). (*See* Doc. 47). Plaintiff also makes no showing that he diligently sought but could not obtain an attorney after being served with notice of the deposition. (*See* Doc. 52 at 2). Accordingly, the Court finds that Rule 32(a)(5)(B) is inapplicable to this case and does not provide a basis to preclude the use of Plaintiff's deposition herein.

three causes of action are irrelevant to Defendant's Motion." (*Id.*). Due to the ambiguity of the Complaint (Doc. 1-3), the Court will address each cause of action in turn.

### A. First Cause of Action: Failure to Give Notice

Plaintiff claims that Defendant Bank violated A.R.S. § 33-808 by failing to give notice of a non-judicial foreclosure. (Doc. 1-3 at 6–7). Defendant Bank responds by contending that: (1) Plaintiff lacks standing to contest any activities related to a non-judicial foreclosure on the Property because Plaintiff lacked an enforceable interest in the Property; and (2) the statute's requirements do not apply to Defendant Bank because Defendant Bank was not the trustee. (*See* Doc. 50 at 5–7).

#### 1. Standing Issue

First, Defendant Bank argues that Plaintiff lacks an enforceable interest in the Property and, therefore, does not have standing to assert a claim regarding activity conducted at the property. (Doc. 50 at 5–7). "The United States Supreme Court requires that a litigant must have standing to assert a claim because federal courts can only hear 'cases' and 'controversies.'" *Cent. Arizona Irr. & Drainage Dist. v. Lujan*, 764 F. Supp. 582, 586 (D. Ariz. 1991) (citing *Valley Forge College v. Americans United for the Separation of Church and State*, 454 U.S. 464, 471 (1982)). It is well-settled that "in the absence of a basis on which [a plaintiff can] assert a claim to the property, [a plaintiff is] not entitled to notice under the foreclosure statutes," namely A.R.S. § 33–808. *Stoller v. Bank of New York Mellon Tr. Co.*, No. 211-CV-00338-PHX-GMS, 2011 WL 4465337, at *8 (D. Ariz. Sept. 26, 2011).

##### a. Plaintiff's Property Interest Theories

Plaintiff advances several theories to attempt to create a property interest in the Property via a quitclaim deed, adverse possession, and tenancy. (Doc. 52 at 5). To the extent that Plaintiff's theories suggest that the Armstrongs agreed to transfer an interest in the property to him, the transfer would be subject to the statute of frauds. The statute of frauds provides, in pertinent part: "[n]o action shall be brought in any court" to enforce a contract for "an agreement for leasing for a longer period than one year, or for the sale of

real property or an interest therein" unless the contract is in writing and signed by the party to be charged. A.R.S. § 44–101(6). "An oral agreement for the sale of real property or an interest therein is presumed to be unenforceable unless otherwise exempted from the [s]tatute of [f]rauds." *Diaz-Amador v. Wells Fargo Home Mortgages*, 856 F. Supp. 2d 1074, 1080 (D. Ariz. 2012) (internal quotation marks and citation omitted).

### i. Quitclaim Deed

Here, Plaintiff asserts that he has an interest in the Property via a "partially executed" quitclaim deed from Sharon Armstrong. (*Compare* Doc. 52 at 5 *with* Doc. 51-1 at 5). Plaintiff, however, admits that neither Sharon nor Richard Armstrong actually signed the quitclaim deed. (Doc. 51-1 at 6–8). As a result, the so-called "partially executed" deed is of no effect. *See, e.g.*, *In re Heritage Real Estate Inv., Inc.*, No. 14-03603-NPO, 2017 WL 4693991, at *3 (Bankr. S.D. Miss. Oct. 17, 2017) (holding that a "Quitclaim Deed is facially invalid and void as a matter of law" if unsigned by the grantor); *City of Buckley v. Toman*, No. 3:10-CV-05209-RBL, 2011 WL 3298418, at *2 (W.D. Wash. Aug. 1, 2011) (supporting the general rule that a quitclaim deed is only valid if signed by the party to be bound thereby). Any purported oral agreement to transfer the property to Plaintiff is also presumably unenforceable because an attempted conveyance without a signed writing violates the statute of frauds. *See Diaz-Amador*, 856 F. Supp. 2d at 1080. Accordingly, the Court finds that Plaintiff fails to establish an enforceable interest in the Property via a quitclaim deed.

### ii. Adverse Possession

Next, Plaintiff suggests that he acquired an interest in the Property through adverse possession. (*See* Doc. 52 at 5). On September 4, 2014, Plaintiff recorded a Statement of Claim of Right with respect to the Property in an attempt to document his claim for adverse possession. (*See* D Bank SOF ¶¶ 8–9 (citing Doc. 51-1 at 15 (Plaintiff explained in his deposition that: "I didn't have a full quitclaim deed that was signed, only a partial from Sharon. So, basically, one of the other options was to take a claim of right possession, which is called adverse possession[.]"))). "Under Arizona law, a party

claiming title, or in this case compensation, for real property by adverse possession must show that his or her possession was exclusive, actual, open and notorious, hostile, under a claim of right, and continuous for the statutory period of *ten years.*" *In re Jake's Granite Supplies, L.L.C.*, 442 B.R. 694, 699 (D. Ariz. 2010) (citing A.R.S. §§ 12–521, 12–526 (2010)) (emphasis added); *see also Spaulding v. Pouliot*, 181 P.3d 243, 250 (Ariz. Ct. App. 2008).

Here, even if Plaintiff satisfied the other elements of adverse possession, he did not maintain possession of the Property for ten years. (*See* D Bank SOF ¶ 3 (citing Doc. 51-1 at 11)). Plaintiff testified in his deposition that he started visiting the Property as early as 2013, which is insufficient to meet the statutory requirement for adverse possession under Arizona law. (Doc. 51-1 at 11). Accordingly, the Court finds that Plaintiff could not possibly have established an enforceable interest in the Property through adverse possession.[5]

### iii. Tenancy

Finally, Plaintiff argues that he was a tenant of the Armstrongs at the Property. (*See* Doc. 52 at 4). Under the Arizona Residential Landlord and Tenant Act, a tenant is "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." A.R.S. § 33-1310. A rental agreement must "embody[] the terms and conditions

---

[5] Plaintiff cites A.R.S. § 12-522 in connection with his argument that he adversely possessed the Property. (Doc. 52 at 5). That sparsely-used statute states, in pertinent part: "[w]hen a party in possession claims real property by right of possession only, actions to recover possession from him shall be commenced within two years after the cause of action accrues" by a "plaintiff who shows no better right." A.R.S. § 12-522. In interpreting its predecessor statute, the United States Supreme Court clarified that the two-year limitation "applies only in cases of mere possessory rights, and is without force after the passing of the full legal or equitable title from the government." *Howard v. Perrin*, 200 U.S. 71, 74 (1906) (resolving a dispute over public lands granted to individuals prior to Arizona gaining statehood). The Supreme Court concluded that "the limitation applies solely against a plaintiff who shows no better right." *Id*. (internal quotation marks and citation omitted). Here, the Property was subject to a Deed of Trust (D Bank SOF ¶ 25; *see also* Doc. 35 at 26) and Defendant Bank was listed as the "Current Beneficiary" in the Notice of Trustee's Sale (Doc. 35 at 22). As reasoned herein, Plaintiff has no enforceable interest in the property, so Defendant Bank has a superior right to the Property. *See infra* Part IV(A)(1)(a). Accordingly, A.R.S. § 12-522 cannot establish a right of possession in the Property for Plaintiff, nor can the statute be used to preclude Defendant Bank from asserting its claim to the Property.

concerning the use and occupancy of a dwelling unit and premises." *Id.* Moreover, "[t]o be enforceable, a contract must have adequate consideration and specification of terms so that the obligations of each party can be ascertained." *Big Bear Imp. Brokers, Inc. v. LAI Game Sales, Inc.*, No. CV-08-2256-PPH-DGC, 2010 WL 729208, at *2 (D. Ariz. Mar. 2, 2010). Conversely, guests at a property "are not tenants and have no interest in the realty; they are mere licensees." *Forte v. Hyatt Summerfield Suites, Pleasanton*, No. C 11-2568 CW, 2012 WL 6599724, at *3 (N.D. Cal. Dec. 18, 2012). "[L]icensees, as opposed to tenants, do not have a cognizable property interest." *Smith v. County of Nassau*, No. 10-CV-4874 MKB, 2015 WL 1507767, at *8 (E.D.N.Y. Mar. 31, 2015), *aff'd*, 643 Fed. Appx. 28 (2d Cir. 2016) (holding that a plaintiff who was not a lawful tenant at a property—but "rather, a squatter or licensee"—lacked standing to bring a claim for wrongful eviction).

Here, Plaintiff refers to a "signed lease agreement with the Armstrongs" in his motion, but testified in his deposition that there was no signed lease agreement, nor has Plaintiff produced one at any point during the litigation. (*Compare* Doc. 52 at 5 *with* D Bank SOF ¶ 16 (citing Doc. 51-1 at 9)). Plaintiff concedes that he never paid rent to the Armstrongs, which further undermines Plaintiff's tenancy argument. (D Bank SOF ¶ 18 (citing Doc. 51-1 at 10, 13)). Additionally, Plaintiff stated that the purported tenancy agreement was "ongoing" and did not have a specific start date or end date. (D Bank SOF ¶ 19–20 (citing Doc. 51-1 at 12–13)).[6] Accordingly, the Court finds that there is no rental agreement or otherwise enforceable contract between Plaintiff and the Armstrongs because Plaintiff puts forth insufficient terms and conditions required to constitute such an agreement. (*See generally* Doc. 52). Even if Plaintiff had permission from the Armstrongs to be present at the Property for some uncertain period of time, "any verbal agreement between the parties was indefinite, undocumented, and unenforceable." *Rodenbaugh v. Wood*, No. 1 CA-CV 06-0117, 2007 WL 5435016, at *1 (Ariz. Ct. App.

---

[6] To the extent that the purported lease agreement was for greater than one year, it would violate the statute of frauds because there is no signed, written agreement. A.R.S. § 44–101(6); *see infra* Part IV(A)(1)(a).

Sept. 27, 2007).[7]

In construing all disputed facts in the light most favorable to Plaintiff, the Court finds that Plaintiff may have been a guest of the Armstrongs, but was never a tenant at the Property and, therefore, fails to establish any interest in the Property under a tenancy theory. *See Ellison*, 357 F.3d at 1075. "Plaintiff's failure to allege a basis for standing further demonstrates the insufficiency of Plaintiff's claim for failure to comply with the notice required under [A.R.S. § 33–808]." Consequently, "Plaintiff is merely an uninvolved and unaffected third-party," who "therefore lacks standing" to challenge the trustee sale and associated notice requirements. *Kakarala v. Wells Fargo Bank, N.A.*, No. CV-10-00208-TUC-FRZ, 2012 WL 1458235, at *8 (D. Ariz. Apr. 27, 2012). Accordingly, the Court finds that Defendant Bank is entitled to summary judgment on Plaintiff's cause of action for failure to give notice under A.R.S. § 33-808.

### 2. Trustee Issue

In the alternative, even if Plaintiff did have standing to contest compliance with the notice requirements of A.R.S. § 33-808, Defendant Bank is not subject to those requirements. The statute provides, in pertinent part: "*The trustee* shall give written notice of the time and place of sale legally describing the trust property to be sold" by "[p]osting a copy of the notice of sale, at least twenty days before the date of sale in some conspicuous place on the trust property to be sold." A.R.S. § 33-808(A)(3) (emphasis added). Defendant Bank argues that A.R.S § 33-808 only applies to trustees and it was not the trustee. (*See* Doc. 50 at 5). Defendant Bank explains that it "did not act as the

---

[7] Plaintiff also attempts to rely on A.R.S. § 33-1002 to establish a right of occupancy in the Property. The statute, however, only applies to an "owner-occupant" who "holds legal or equitable title to the dwelling by a deed or contract for the conveyance of real property recorded with the county recorder[.]" A.R.S. § 33-1002. As reasoned herein, Plaintiff lacks an ownership interest in the Property. *See infra* Part IV(A)(1)(a). Moreover, A.R.S. § 33-1002 only applies to mechanics or materialmen's liens, not deeds of trust, as is present here. *See, e.g.*, *Marco Crane & Rigging Co. v. Masaryk*, 341 P.3d 490, 491 (Ariz. Ct. App. 2014) (applying A.R.S. § 33-1002 as one of "Arizona's mechanic's lien statutes"); *Williamson v. PVOrbit, Inc.*, 263 P.3d 77, 80 (Ariz. Ct. App. 2011) (explaining that A.R.S. § 33-1002 is "one of Arizona's mechanics' and materialmen's lien statutes"). Accordingly, A.R.S. § 33-1002 is inapplicable to this case and cannot establish an interest in the Property for Plaintiff.

trustee under the Deed of Trust in the recording of the Notice of Trustee's Sale, the conducting of the aforementioned trustee's sale, or the recording of the Trustee's Deed Upon Sale." (Doc. 35 at 3).

Rather, "Quality Loan Service Corporation, *as trustee under the Deed of Trust* securing the Loan, recorded a Notice of Trustee's Sale" on February 4, 2015. (*Id.* at 2 (emphasis added); *see also id.* at 22–23 (listing Quality Loan Service Corporation as the "Trustee/Agent" in the document recorded in Mohave County)). Quality Loan Service Corporation is again listed as the "Trustee" in the Trustee's Deed Upon Sale, recorded in Mohave County on May 26, 2015. (Doc. 35 at 26). The Court finds no evidence that Defendant Bank ever served as trustee over the Property. (*See generally* Doc. 52). Thus, Defendant Bank had no notice compliance requirements with respect to A.R.S § 33-808. *See White v. Nationstar Mortgage LLC*, No. CV-17-01569-PHX-DGC, 2018 WL 1744998, at *1–2 (D. Ariz. Apr. 11, 2018) (granting a loan servicer judgment as a matter of law on a claim for failure to comply with A.R.S § 33-808 because the statute only imposes notice requirements on a trustee). Accordingly, Defendant Bank is entitled to summary judgment on this cause of action even if the statute's requirements were not otherwise met, as Plaintiff contends.[8]

### B. Second Cause of Action: Protecting Tenants at Foreclosure Act of 2009

Next, Plaintiff alleges a violation of the Protecting Tenants at Foreclosure Act of 2009. *See* Protecting Tenants at Foreclosure Act of 2009 ("PTFA"), Pub. L. No. 111–22, §§ 701–04, 123 Stat. 1660–62 (2009). "The Protecting Tenants at Foreclosure Act of 2009 provides that a successor in interest takes interest in a foreclosed-on property subject to the rights of any bona fide tenant." *Fed. Nat. Mortg. Ass'n v. Sears*, No. 1 CA-CV 11-0095, 2011 WL 6292220, at *2 (Ariz. Ct. App. Dec. 15, 2011) (citing PTFA §§ 701–04). Purchasers must honor "any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease."

---

[8] The Court need not determine whether all of the notice requirements provided by A.R.S § 33-808 were satisfied in resolving the pending summary judgment motions because Defendant Bank cannot be held liable under A.R.S § 33-808 as a non-trustee.

- 13 -

PTFA § 702(a)(2)(A). One requirement of a bona fide lease is that "the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property." PTFA § 702(b)(3). Here, Plaintiff concedes that he never paid rent to the Armstrongs and the Court found herein that Plaintiff was not a tenant at the Property. (D Bank SOF ¶ 18 (citing Doc. 51-1 at 10, 13)); *see supra* Part IV(A)(1)(a). Accordingly, Plaintiff's reliance on the Protecting Tenants at Foreclosure Act of 2009 is misplaced as the Act does not apply to Plaintiff. The Court, therefore, finds that Defendant Bank is entitled to summary judgment on Plaintiff's second cause of action for violating the Protecting Tenants at Foreclosure Act of 2009.

### C. Third Cause of Action: Unlawful Eviction

Plaintiff produced no evidence, nor does he argue that Defendant Bank played any role in an eviction following the trustee's sale. (Doc. 50 at 8; *see generally* Doc. 52). Further, Defendant Bank had no interest in the Property following the trustee's sale. (*See* D Bank SOF ¶ 26 (citing Doc. 51-7 at 2–5)). Based on Plaintiff's own concession, Plaintiff's third cause of action cannot be directed at Defendant Bank. (*See* Doc. 52 at 3). Accordingly, the Court finds that Defendant Bank is entitled to summary judgment on Plaintiff's third cause of action for unlawful eviction.

### D. Fourth Cause of Action: Civil Trespass

Similarly, Plaintiff's fourth cause of action for civil trespass cannot be directed at Defendant Bank. (Doc. 50 at 8; *see generally* Doc. 52). First, the Court found herein that Plaintiff lacks an enforceable interest in the Property. *See supra* Part IV(A)(1)(a); *see also BMO Harris Bank, N.A. v. Thruston*, No. 1 CA-CV 15-0279, 2016 WL 5219856, at *3 (Ariz. Ct. App. Sept. 22, 2016) (finding that appellants lacked standing to challenge a trespass to land because the appellants did not have an interest in the land). Accordingly, Plaintiff cannot maintain an action for civil trespass of the Property without an enforceable interest in the Property.

Moreover, Arizona law provides that a "trespasser is one who does an unlawful act or a lawful act in an unlawful manner to the injury of the person or property of another.

With respect to trespass to real property, [a] physical entry on the land is an essential element of a trespass." *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 770–71 (D. Ariz. 2012) (internal quotation marks and citations omitted). Here, Plaintiff does not allege that Defendant Bank or its agent unlawfully entered the Property. (*See generally* Doc. 52). Rather, Plaintiff focuses his arguments regarding unlawful entry at Defendant Robinson, who is unaffiliated with Defendant Bank. (*See* Doc. 40 at 3–4). Accordingly, the Court finds that Defendant Bank is entitled to summary judgment on Plaintiff's fourth cause of action for civil trespass.

## V. DEFENDANT ROBINSON'S MOTION FOR SUMMARY JUDGMENT

Defendant Robinson also moves for summary judgment on all four of Plaintiff's causes of action. (Doc. 38 at 1). As the Court previously identified, because the Complaint (Doc. 1-3) does not differentiate between Defendant Bank and Defendant Robinson in setting out Plaintiff's four causes of action, not all causes of action actually pertain to Defendant Robinson. *See supra* Part IV.[9]

### A. First Cause of Action: Failure to Give Notice

Plaintiff's first cause of action regarding notice of the trustee sale pursuant to A.R.S. § 33-808 pertains only to Defendant Bank. *See supra* Part IV(A). Plaintiff makes no arguments regarding A.R.S. § 33-808 in opposing Defendant Robinson's pending motion, nor does Plaintiff argue that Defendant Robinson fulfilled the role of trustee. (*See generally* Doc. 40). Rather, Plaintiff argues that Defendant Robinson should be

---

[9] Prior to addressing the merits of the claims, Plaintiff argues in his Response (Doc. 40) that Defendant Robinson's Motion for Summary Judgment (Doc. 38) should be denied because Defendant Robinson's Separate Statement of Facts (Doc. 39) purportedly violates Rule 56(c)(4). (Doc. 40 at 1–2). Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56. Plaintiff's specific contention is that Defendant Robinson's Separate Statement of Facts (Doc. 39) must be signed by someone with personal knowledge of the underlying facts—namely, Defendant Robinson himself—as opposed to Defendant Robinson's attorney. (Doc. 40 at 1–2). Plaintiff's contention, however, is baseless. The Separate Statement of Facts required by LRCiv 56.1(a) is not an affidavit and may be signed by the attorney filing the motion for summary judgment. The Court finds that Defendant Robinson's Separate Statement of Facts (Doc. 39), which is signed by Defendant Robinson's attorney, complies with both Rule 56(c)(4) and LRCiv 56.1.

considered "a property manager under Arizona real estate laws," which does not trigger any notice obligations pursuant to A.R.S. § 33-808. (Doc. 40 at 3). Additionally, the Court found herein that Plaintiffs lacks standing to bring a claim for failure to give notice because Plaintiff lacks an enforceable interest in the Property. *See supra* Part IV(A)(1). Accordingly, the Court finds that Defendant Robinson is entitled to summary judgment on Plaintiff's first cause of action for failure to give notice.

### B. Second Cause of Action: Protecting Tenants at Foreclosure Act of 2009

Similarly, Plaintiff does not make any argument that the Protecting Tenants at Foreclosure Act of 2009 applies against Defendant Robinson. (*See generally* Doc. 40). Instead, Plaintiff clarified in the Rule 26(f) Case Management Report (Doc. 19) that, "[a]s it pertains to Robinson, Plaintiff's Complaint contains allegations of unlawful eviction and trespass." (*See* D Robinson SOF ¶ 13 (citing Doc. 19 at 2)). Plaintiff seemingly abandoned any claim under the Protecting Tenants at Foreclosure Act of 2009, which nonetheless does not apply to this case because the Court found herein that Plaintiff was not a tenant at the Property. *See supra* Part IV(B). Accordingly, the Court finds that Defendant Robinson is entitled to summary judgment on Plaintiff's second cause of action for violating the Protecting Tenants at Foreclosure Act of 2009.

### C. Third Cause of Action: Unlawful Eviction

Plaintiff's third cause of action is premised on arguments that the trustee sale of the Property was invalid or that Plaintiff was a tenant at the Property. (Doc. 40 at 3 (Plaintiff argues that "*if* the trustee sale is declared invalid, then anything that follows it would be likewise invalid" (emphasis added))); *see also Arce-Mendez v. Eagle Produce P'ship Inc.*, No. CV 05-3857-PHX-JAT, 2008 WL 659812, at *5 (D. Ariz. Mar. 6, 2008) ("unlawful eviction" arises in the context on a landlord-tenant relationship). Plaintiff, however, lacks standing to challenge the validity of the trustee sale because he lacks an enforceable interest in the Property. *See supra* Part IV(A)(1). Furthermore, the Court cannot find that the trustee sale at issue was invalid, nor can Plaintiff maintain a claim for unlawful eviction—regardless of the validity of the trustee sale—when he lacks an

interest in the Property. *See id.*; *see also* Doc. 28 at 3 (acknowledging the May 11, 2015 trustee sale). Accordingly, the Court finds that Defendant Robinson is entitled to summary judgment on Plaintiff's third cause of action for unlawful eviction.

### D. Fourth Cause of Action: Civil Trespass

Finally, Plaintiff asserts a claim for trespass against Defendant Robinson for entering the Property and removing its contents without Plaintiff's permission. (Doc. 40 at 3–4). "[Plaintiff's] trespass claim necessarily requires that he first establish a legal interest . . . in the burdened property." *Rogers v. Bd. of Regents of Univ. of Arizona*, 311 P.3d 1075, 1079 (Ariz. Ct. App. 2013). To the extent that Plaintiff seeks relief under Arizona's Residential Landlord Tenant Act, the claim fails because the Act only protects tenants. *See* A.R.S. § 33-1304 ("This chapter shall apply to the rental of dwelling units"). The Court found herein that Plaintiff was not a tenant at the Property and no lease agreement exists that would give Plaintiff standing to assert a claim for trespass at the Property. *See supra* Part IV(A)(1).

Moreover, it is undisputed that Defendant Robinson was at all times acting as an agent of Fannie Mae when he entered the Property. (*Compare* D Robinson SOF ¶ 10 *with* Doc. 40 at 3). Fannie Mae lawfully purchased the Property at public auction on May 11, 2015. (D Robinson SOF ¶ 14; *see also* Doc. 51-7 at 2). From that point until the Property was sold to a new buyer on December 22, 2015, Fannie Mae was the owner of the Property. (D Robinson SOF ¶ 8). The Court finds that Defendant Robinson only entered the Property during Fannie Mae's period of ownership with the express authorization of the owner. (*See* D Robinson SOF ¶ 2–5, 8 (noting that Defendant Robinson first entered the Property on May 15, 2015 to post notice that Fannie Mae was then the owner of the Property); *see also* Doc. 40 at 2-3 (acknowledging that Plaintiff received a copy of the original notice posted by Defendant Robinson)). Accordingly, the Court finds that Defendant Robinson is entitled to summary judgment on Plaintiff's fourth cause of action for civil trespass.

### VI. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment on his first cause of action against Defendant Bank for failure to give notice of non-judicial foreclosure pursuant to A.R.S. § 33-808. (Doc. 28 at 2). As reasoned herein, Defendant Bank is entitled to summary judgment on that cause of action because Plaintiff lacks standing to assert the claim and Defendant Bank was not subject to the notice requirements A.R.S. § 33-808 as a non-trustee.[10] *See supra* Part IV(A). Accordingly, Plaintiff's Motion for Partial Summary Judgment (Doc. 28) is denied.

## VII. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant Bank of America's Motion for Leave to File a Declaration (Doc. 34) is **GRANTED**. The Clerk of Court shall file Defendant Bank of America's Declaration (currently lodged at Doc. 35).

**IT IS FURTHER ORDERED** that Plaintiff Derek Chabrowski's Objections (Doc. 52; Doc. 56) are **DENIED/OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant Bank of America's Motion for Summary Judgment (Doc. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Jeffrey Robinson's Motion for Summary Judgment (Doc. 38) is **GRANTED**.

---

[10] The Court need not address Plaintiff's additional damages arguments set forth in his Motion for Partial Summary Judgment (Doc. 28) because, in granting summary judgment to Defendant Bank, the issue of damages is moot. Even so, the Court observes that Plaintiff argues therein that he is entitled to "$93,000 for unjust enrichment" to Defendant Bank from the trustee sale under A.R.S. § 33-814. (Doc. 28 at 7). "Section 33-814, Arizona's anti-deficiency statute, governs actions to recover balances remaining after foreclosure under a deed of trust." *333 W. Thomas Med. Bldg. Enterprises v. Soetantyo*, 976 F. Supp. 1298, 1300 (D. Ariz. 1995), *aff'd*, 111 F.3d 138 (9th Cir. 1997) (citing A.R.S. § 33-814). This statute is inapplicable to Plaintiff's claims because Plaintiff provides no evidence that Defendant Bank ever sought a deficiency judgment with regard to the Property and "Plaintiff is merely an uninvolved and unaffected third-party" with regard to the original mortgage on the Property. *Kakarala*, 2012 WL 1458235, at *8. Only a party to the mortgage could assert a right to recover from the excess balance remaining, if any, following the foreclosure and sale of the Property. *See, e.g., Long v. Corbet*, 888 P.2d 1340, 1342 (Ariz. Ct. App. 1994) (reasoning that the "only parties relevant" to an action to recover excess funds from a trustee's sale that exceeded the amount due on a loan are those who are party to the loan). Accordingly, Plaintiff's invocation of A.R.S. § 33-814 fails to raise a triable issue before the Court.

**IT IS FURTHER ORDERED** that Plaintiff Derek Chabrowski's Motion for Partial Summary Judgment (Doc. 28) is **DENIED**. The Clerk of Court shall enter judgment in favor of Defendants accordingly.

Dated this 28th day of August, 2018.

James A. Teilborg
Senior United States District Judge